MARSHALL BENNETT, Treasurer of Benton County, Arkansas, Appellant, v. L. C. LOHMAN.

Division One, March 14, 1922.

1. **APPELLATE PRACTICE:** Printed Record: Failure to File: Motion to Dismiss. Where respondent has been served with a printed copy of the record thirty days before the date set for hearing a cause in the Supreme Court, the failure of appellant to file ten copies of such printed record in the court thirty days before such date, as required by statute, is, as to respondent, a harmless omission and his motion to dismiss the appeal will be overruled.

2. ———: ———: Another Suit: Demurrer to Petition. On appeal from a judgment sustaining a demurrer to a petition, the record before the appellate court consists of the petition, the demurrer and the judgment entered thereon; and, in the absence of any allegation in the petition as to a previous suit between the same parties, such suit cannot be considered in determining the questions before the appellate court, even though what purport to be printed abstracts of the record therein are filed in the appellate court.

3. **PLEADING:** Speaking Demurrer: Foreign Statutes. A demurrer to a petition, which seeks to raise the question that the action is barred by the Statute of Limitation of a sister state and for that purpose sets forth the statute, is a "speaking demurrer" and worth-

less. The law of another state is a fact to be pleaded and proved as other facts, and the office of a demurrer is to raise issues of law and not issues of fact.

4. ———: **Petition in One Count: Two Statutory Actions: Demurrer for Misjoinder.** A petition, seeking to recover county funds from a stockholder of a bank in which they had been deposited, which, in one count sets forth two separate and distinct statutes of a sister state, one statute authorizing. a county treasurer to deposit the public funds in an incorporated bank and making such treasurer and the sureties on his bond and such bank and its stockholders liable for such funds, and the other statute providing for the selection of a county depository and requiring the county treasurer to deposit the public funds therein and relieving him of liability therefor after so doing unless they should be again paid to him, and making the bank and the sureties on the bond to be given by it and the stockholders of such bank liable for such funds, upon failure of the bank to pay them on demand, states two separate statutory causes of action and is demurrable for misjoinder.

5. **LIMITATION OF ACTIONS: Foreign Statutes: Law of Forum.** In a suit, in this State, based upon a cause of action under a statute of a sister state, the Statute of Limitations of this State applicable to the case will govern, in the absence of pleading and proof that the cause of action was barred by the Statute of Limitation of such sister state.

6. **PARTIES: Real Party in Interest: Foreign Statutes: County Treasurer.** In a suit brought in the name of a county treasurer as such, of an Arkansas county, based on statutes of that state, seeking to recover, from a stockholder of a bank of that state which was a depository of county funds, the amount of such funds which the bank had failed to pay on demand, where the petition sets forth the statutes relied on but does not plead that the courts of Arkansas had construed them as authorizing the treasurer to sue in his own name, such statutes will be construed according to the law of this State, which is that the funds belong to the county and the suit must be brought in the name of the county as the real party in interest, and hence the petition is demurrable on that ground.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*Rice & Rice* and *Irwin & Haley* for appellant.

(1)  Plaintiff had the right to sue and recover. Haynes v. Butler, 30 Ark. 69; Sallee v. Bank of Corning, 122 Ark. 503; Bank v. Harris, 114 Ark. 344; Henry v. Steed, 120 Ark. 583; Warren v. Nix, 97 Ark. 384; Pettigrew v. Washington Co., 43 Ark. 41; Art. 7, sec. 46, Art. Const.; Sec. 1159, Kirby's Digest; Kimble v. Davis, 52 Mo. App. 194.  (a). There are many cases and textbooks declaring that the *lex loci contractus* governs as to the validity, nature, interpretation, construction and effects.  Landrum v. Lindsey, 114 Ark. 82; Hough v. Maupin, 73 Ark. 518; Roberts v. State, 116 Ark. 415; Jordan v. Thornton, 7 Ark. 231; Land v. Hodges, 26 Ark. 556; Howcott v. Kilbourn, 44 Ark. 213; Matthews v. Paine, 47 Ark. 54; Lower v. Lower, 107 Ark. 70.  (2) Defendants urge that the cause of action is barred by the Statute of Limitations in force in the State of Arkansas, and is barred by the laws of limitations in Arkansas, and is barred by the Statute of Limitations of Missouri.  The cause of action did not accrue until the treasurer demanded of said depository the public funds in said depository.  This was on the 16th day of July, 1914.  The first petition was filed in the Circuit Court of Cole County, on February 18, 1915, and the second petition was filed in said court on July 7, 1919.  Plaintiff's suit was commenced when he filed his petition.  Sec. 1182, R. S. 1919; State ex rel. v. Broaddus, 245 Mo. 123; State ex rel. v. Wilson, 216 Mo. 215.  (3) It is claimed that there are several causes of action improperly joined in the plaintiff's petition.  We submit that this is not tenable.  It will be found that the Arkansas cases construing the act in the above cited cases dispose of this to the contrary.

*Ira H. Lohman* and *A. T. Dumm* for respondent.

(1)  This suit is brought in the name of Marshall Bennett, as Treasurer of Benton County, Arkansas.  If

there is or was any liability by this defendant, it is to Benton County, Arkansas. Plaintiff is not entitled to the money sued for. He has no capacity to sue in this State, and we doubt if Benton County, Arkansas, has any capacity to sue in a Missouri State court. 10 Cyc. 672; Drinkwater v. Ry. Co., 18 Me. 35; Rice v. Hosiery Co., 56 N. H. 129; Leucke v. Tredway, 45 Mo. App. 513; 14 C. J. p. 994, sec. 1537, and cases cited under Note 61; Murtey v. Allen, 71 Vt. 380; Abbott v. Goodall, 100 Me. 236. (a) Under the laws of Missouri, where a county is an interested party, the suit must be brought in the name of the county. Sec. 9504, R. S. 1919; Cole County v. Dallmeyer, 101 Mo. 65; Lafayette Co. v. Hickson, 69 Mo. 581; Barry Co. v. McGlothlin, 19 Mo. 307; State v. Rubey, 77 Mo. 618. (b) Counties have not the powers of corporations in general, they are merely *quasi*-corporations, political subdivisions of the State, and only by the laws of the State of Missouri do counties in this State have any capacities to sue in this State. A county of a foreign state has no capacity to sue in the Missouri courts. Mo. Constitution, art. 9, sec. 1; Clark v. Adair County, 79 Mo. 536; State ex rel. Chouteau v. Leffingwell, 54 Mo. 458; Barton County v. Walser, 49 Mo. 236; Reardon v. St. Louis County, 36 Mo. 555. (c) Only the circuit attorney is authorized to prosecute an action in which the county is concerned. St. Louis County v. Clay, 4 Mo. 559. (2) The petition seeks to recover in one count upon two separate and distinct sections and acts, improperly united in one petition. One, based upon Act No. 82, a penal statute, making it unlawful for officers to do certain acts; the other, Act No. 113, applying only to the counties of Carroll, Benton and White, in regard to county depositories, both of which are declared upon in the same count. And there is a misjoinder thereof. Peyton v. Rose, 41 Mo. 258; McCoy v. Yager, 34 Mo. 134; Clark's Admx. v. Railroad Co., 36 Mo. 202. (3) The petition states that the Bank of Rogers failed on July 16, 1914, and that demand was made on L. C. Lohman for the payment of the amount on deposit, upon the same

day; therefore the Statute of Limitations begins to run
on July 16, 1914. The present suit was filed July 7, 1919.
Under the laws of Arkansas action upon any contract or
liability, expressed or implied, not in wriitng, is barred
in three years. Sec. 5299, Kirby's & Castle's Digest of
Arkansas, 1916. (4) The laws of Missouri making Stat-
utes of Limitation applicable to states and counties, must
apply in this case. The law of the forum, that is the law
of limitations, in the state where the suit is brought,
must govern. Sec. 1343, R. S. 1919; King v. Lane, 7 Mo.
241; McMerty v. Morrison, 62 Mo. 140; Stirling v. Win-
ters, 80 Mo. 141; Carson v. Hunter, 46 Mo. 467; Williams
v. Ry. Co., 123 Mo. 573; Hurley v. Mo. Pac., 57 Mo. App.
675; Morgan v. Met. St. Ry., 51 Mo. App. 523.

GRAVES, J.—The only case we have pending here,
according to the short transcript on file, is the case of
"Marshall Bennett, as Treasurer of Benton County,
Arkansas, v. L. C. Lohman." We note this because there
are additional abstracts of record with reference to an-
other case against L. C. Lohman, filed in the circuit court
prior to the one indicated by the short transcript of
record filed by appellants in this case. We can only
deal with the record before us. This record shows that
the circuit court sustained a demurer to plaintiff's peti-
tion, and plaintiff, refusing to further plead, judgment
was entered for the defendant as against the plaintiff
and his sureties. The record in the case before us con-
sists of the petition, the demurrer, and the judgment
thereon, as such judgment is above indicated. The rel-
evancy of the record in a previous case against Lohman
can be noted, if it becomes important. It can only be-
come important on the Statute of Limitations. The first
petition filed in February, 1915, had as plaintiffs, "Ben-
ton County, Arkansas, and N. S. Henry, Treasurer of
Benton County, Arkansas." July 7, 1919, was filed the
present petition. By this we mean the petition upon
which the judgment appealed from was rendered. It is
entitled, "Marshall Bennett, as Treasurer of Benton

County, Arkansas, plaintiff, vs. L. C. Lohman, defendant.'' The petition charges:

"The plaintiff for his cause of action against the defendant herein alleges:

"1.   That he is the duly elected, qualified, commissioned and acting treasurer of Benton County, Arkansas.

"That on and prior to the sixteenth day of July, 1914, N. S. Henry was the duly elected, qualified, commissioned and acting treasurer of Benton County, Arkansas, and continued to serve as such treasurer until the election and qualification of Marshall Bennett as treasurer of Benton County, Arkansas, and that plaintiff, Marshall Bennett, is the successor in office of the said N. S. Henry as treasurer of Benton County, Arkansas.

"2.   That the Bank of Rogers, of Rogers, Ark., was duly incorporated as a banking corporation under the laws of the State of Arkansas in the year, 1912, as provided by the Statutes of Arkansas as digested by William F. Kirby in the year 1904, and under the title: 'Incorporations—Manufacturing and Other Business Corporations, Chapter 31.' And said Bank of Rogers was incorporated with capital stock of $150,000, divided into 1,500 shares of $100 each, and with all the powers and privileges of a banking corporation began to transact a banking business and continued in such business until the sixteenth day of July, 1914, when its affairs were taken over in charge of by the Banking Commissioner of the State of Arkansas as an insolvent banking institution, and he still has charge of the same.

"That pursuant to the provisions of Act No. 82 of the Legislature of Arkansas, approved March 17, 1903, and which is Section 1990 of Kirby's Digest of the Statutes of Arkansas, and which is in words and figures as follows, to-wit:

"'Act 82.

"'AN ACT to amend section 1849 of Sandels & Hill's Digest.

"'Section:

" '1.  Amends section 1849 of Sandels & Hill's Digest, relating to the deposit of public funds.

" '2.  Act in effect from passage.

" " 'Be it enacted by the General Assembly of the State of Arkansas:

" 'Section 1.  That section 1849 of Sandels & Hill's Digest of the Statutes of Arkansas be amended as follows:

" 'It shall be unlawful for any officer of this State, or of any county, township, city or incorporated town in this State, or any deputy, clerk or other person employed by any such officer, having the custody or possession of any public funds, by virtue of his office or employment, to use any of such funds in any manner whatsoever for his own purpose or benefit, or to loan any of such funds to any person or corporation, whomsoever or whatsoever, or to permit any person or corporation whomsoever or whatsoever, to use any of such funds, or to pay or deliver any such funds to any person or corporation, knowing that he is not entitled to receive it, or for any such officer to wilfully fail or omit to pay over any such funds to his successor in office at the expiration of his term of office; but collectors of taxes, county treasurers and treasurers of cities and incorporated towns may deposit the public funds in their custody in incorporated banks for safe keeping; and the said officers and the sureties on their official bonds, the bank and the stockholders of the bank shall be liable for all funds that such bank on demand shall fail to pay to the person entitled to receive the same.

" 'Section 2.  That this Act shall be in force from and after its passage.

" 'An Act No. 113 of the Legislature of Arkansas, approved March 28, 1905, and which is in words and figures as follows, to-wit:

" 'Act 113.

" 'And Act No. 113 of the Legislature of Arkansas, funds of Carroll, Benton and White counties.

" 'Section

" '1. County Judges of Carroll, Benton and White counties to receive bids for the care of public funds.

" '2. Bids to be filed with clerk of court stating rate of interest to be allowed on such funds for two years, etc.

" '3. Bids to be opened on April 1, 1905, and every two years thereafter, and depository selected.

" '4. Duty of successful bidder to file bond, etc.

" '5. Certified checks to be returned to unsuccessful bidders.

" '6. Amount of bond required.

" '7. Depository for each county must pay checks of county treasurer promptly.

" '8. Should no bid be accepted the court is authorized to name a depository for the funds.

" '9. New or additional bond may be required at any time of depositories.

" '10. Laws in conflict repealed: Act in force from passage.

" 'Be it enacted by the General Assembly of the State of Arkansas:

" 'Section 1. That it shall be the duty of the County Judges of Carroll, Benton and White counties, Arkansas, at the April, 1905, term of the county court, and every two years thereafter, to receive propositions from any bank, banker or trust company, in said counties, that may desire to be the depository of the public funds of said counties, notice of the intention to so receive such propositions, or bids, shall be published by the clerks of said counties, for a period of not less than twenty days before the commencement of said term, in some newspaper published in his said county.

" 'Section 2. Any such bank, banker, or trust company desiring to become such depository, shall on or before the first day of the said term of court, file with the clerk of said court a sealed bid, stating the rate of interest offered to be paid by such bidder, for the two years next ensuing, upon the county funds that may be deposited in pursuance to such bids; and said bids shall be accompanied by a certified check of not less than $250,

and in such greater amount as the court shall order, to be stated in the advertisement heretofore required.

" 'Section 3. At noon, on the said first day of April, 1905, and every two years thereafter, the court shall publicly open each of the said bids so presented, and shall cause each one to be entered of record, and shall select from among such bids, as the depository of all the public funds of the county, including school funds, that bidder offering the highest rate of interest per annum on said funds; provided, said court shall have the right to reject any and all such bids. Said interest shall be computed upon the daily balances to the credit of said county with said depository, and same shall be payable to the county treasurer monthly and shall be immediately placed by said treasurer to the credit of the common school funds of his said county.

" 'Section 4. It shall be the duty of the successful bidder, within twenty days after the selection of such depository, to execute and file with the county clerk a bond payable to his said county, with not less than five solvent and qualified sureties, who shall own in this State real estate, unencumbered, of value as great as the amount of said bond; or to file as the court may direct and deposit as surety for said bond, bonds of the United States of a face value equal to the amount of said bond; or the bond herein required may be given by any authorized guaranty and bonding company doing business in this State, which may be approved by said county court; provided, that any citizen of said counties may appeal from the approval of said bond to the circuit court, in the same manner and with the same effect as is now provided for in the approval of official bonds. All stockholders of any such bank, banker, or trust company shall be liable for all public funds that such bank, banker, or trust company shall fail to pay over on demand to the person entitled to receive the same.

" 'Section 5. After the selection of the depository of the county funds as herein provided, the said court shall return to the unsuccessful bidders the checks de-

posited by them with their bids; and upon the filing and approval of the bond herein required of the successful bidder, the clerk shall return to such successful bidder the check so deposited by it; provided, that should such successful bidder fail or refuse to file said bond, or should same not be approved because of insufficiency, the amount of said certified check shall go to the general revenue fund of the county as liquidated damages, and the clerk shall proceed to re-advertise for bids as in the first instance.

" 'Section 6. The bond herein required shall be for an amount not less than the total revenue of the county for the years for which said bond shall be given, and shall be conditioned for the due and proper performance of all the duties and obligations devolving by law upon said depository, and for the prompt payment upon presentation of all checks drawn upon said depository by the county treasurer of said county, so long as such funds shall be in said depository to the credit of said counties, and that all funds of said county shall be faithfully kept by said depository and accounted for according to law; and that for any breach of said bond, the county or any person injured may maintain an action in the name of the county to the use of said county, or person thereby injured. Upon the approval of said bond the county court shall make an order designating the successful bidder as the depository of all the funds of said county for a period ending thirty days after the time fixed for another selection of a county depository, and it shall be the duty of the county treasurer immediately to transfer to said depository all funds belonging to the county; and thereafter, immediately upon receipt of county funds to deposit same therewith to the credit of the county. Said deposit shall be so made as to preserve the identity of the particular fund to which all money so deposited may belong. For any failure to so deposit any such funds as herein required, the said treasurer shall be liable to the said depository for ten per centum per month upon any sums not so deposited, to be recovered by civil action in

any court of competent jurisdiction. Said treasurer shall be liable upon his official bond as herein specified; but no further liability shall accrue upon same except for his failure to pay over or to account for funds in his possession, and the receipts for any funds of said depository shall release said treasurer from any other liability therefor unless same shall thereafter be repaid to him by such depository.

"'Section 7. It shall be the duty of said depository to provide for the prompt payment at each of the county sites of Carroll, Benton and White counties, of all checks drawn by the county treasurer upon such funds of the county in said depository, and to file with the county treasurer a statement designating the places at such county sites where such payment shall be made. And it shall be a misdemeanor for the county judge, or for the county clerk or his deputy to disclose to any person or persons, prior to the time of opening the bids herein mentioned, the amount or terms of any such bid or bids, and upon conviction thereof, the guilty official shall be fined in any sum not less than $500.

"'Section 8. Should no bids be offered as herein contemplated, or should such bids be deemed too low, or be not for the whole amount of the county funds, the court shall be empowered to order said funds deposited with one or more banks in his said county, in such sums, and for such time as the court may direct, at such rate of interest, not less than three per centum per annum, as may be agreed upon by the said court and the bank proposing to borrow same. In which case the interest shall be computed, and bond shall be furnished as heretofore provided for; provided, that upon deposits made under this section, the bond required shall be not less than the total amount of funds deposited with the said bank. If for any reason no selection of a depository shall be made at the time herein fixed, the same may be done at any subsequent term of court, after giving notice as before required; which depository when so selected

shall remain such until the next regular term of the selection of a depository as required herein.

" 'Section 9. The county court, or judge thereof, may at any time, if he deems it desirable, require a new or additional bond to be filed by said depository; and upon its failure to do so within ten days after service of a copy of said order upon it, the court may proceed to select another depository in the manner herein provided, and meanwhile, if he deems it necessary for the protection of the county funds, shall order all such funds turned over by such depository to the treasurer of the county.

" 'Section 10. All laws and parts of laws in conflict herewith are hereby repealed, and this Act shall take effect and be in force from and after its passage.' "

And of Act No. 80 of the Legislature of Arkansas, approved March 12, 1907, entitled "An Act to Require the County Treasurer of Benton County, Arkansas, to Deposit Funds in the County depository." Section 3 of which reads as follows: "The County Treasurer of said county shall within two days after he receives any funds belonging to the county or any school or road district therein, pay the same over to the county depository of said county as the same is designated and provided by the Act of March 28, 1905.'

"3. The Bank of Rogers aforesaid was by the County Court of Benton County, Arkansas, at its regular April term, 1913, selected and designated as depository of the public funds of Benton County, Arkansas, for the period of two years, and said bank filed its bonds as such depository, which was duly approved by said court, and thenceforth it became and was the depository of such public funds and continued to act as such until July 16, 1914, when its doors were closed and its business, affairs and property were taken over by the State Banking Commissioner as an insolvent bank.

"4. That the said N. S. Henry as county treasurer of said County of Benton, State of Arkansas, as aforesaid, from time to time thereafter deposited public funds

of said county in said Bank of Rogers as depository as aforesaid, and on July 16, 1914, there was on deposit in the said Bank of Rogers as depository as aforesaid and belonging and being a part of the public funds of said county the sum of $49,819.68. And that the said N. S. Henry, as treasurer of Benton County, Arkansas, was entitled to demand and have the same paid to him. And the plaintiff, Marshall Bennett, as treasurer of Benton County, Arkansas, and as successor in office of the said N. S. Henry as treasurer, is entitled to said money after deducting the sums which have been paid into said treasury, with interest thereon at six per cent per annum.

"5. On the sixteenth day of July, 1914, the said N. S. Henry, as treasurer of said County of Benton, State of Arkansas, demanded of said depository that said public funds be paid over to him as such treasurer, and the county court of said county on said day ordered and directed that said funds be paid over to said treasurer, but the same was never paid in whole or in part by said depository or this defendant.

"6. This plaintiff, Marshall Bennett, as treasurer of Benton County, Arkansas, alleges that the defendant, L. C. Lohman, was at and long prior to the date of the failure and refusal of said Bank of Rogers to pay over said funds, and at and long prior to the date when the affairs and property of said Bank of Rogers were taken over as an insolvent banking corporation, a stockholder in said Bank of Rogers and owner of fifteen shares of the capital stock of said Bank of Rogers.

"7. The plaintiff, Marshall Bennett, as treasurer of Benton County, Arkansas, alleges that by the terms and provisions of said Acts of the Legislature of Arkansas as aforesaid the stockholders of said bank were and are primarily , severally and individually liable for all public funds on deposit in said bank as depository, which it failed to pay over to the said treasurer of Benton County, Arkansas, and that this defendant, L. C. Lohman, is liable and is indebted to the plaintiff Marshall Bennett as treasurer of Benton County, Arkansas, for the full

amount of said public funds which said Bank of Rogers, as such depository, failed to pay over and together with six (6) per cent interest thereon since the sixteenth day of July, 1914.

"8. The plaintiff, Marshall Bennett, as such treasurer, alleges that he has made demand upon the defendant for the payment of the amount due him as set forth herein, and he has refused to pay the same or any part thereof. Plaintiff alleges that, after deducting from the principal and accrued interest thereon all payments, there remains past due and unpaid on said public funds which were due said treasurer of Benton County, Arkansas, and which said depository failed to pay over upon demand as aforesaid, the sum of $15,425.46. And that the said L. C. Lohman is liable and indebted to the plaintiff, Marshall Bennett, as treasurer of Benton County, Arkansas, in the sum of $15,425.46, for which sum the plaintiff brings this suit and prays judgment for said sum of $15,425.46, together with six per cent interest from date of filing this suit, and for all his costs herein laid out and expended."

To this the defendant filed a demurrer as follows:

"Now comes defendant and demurs to petition herein filed by plaintiff, for the reasons following:

"First. It appears from the face of plaintiff's petition that the plaintiff has not the legal capacity to sue in the State of Missouri.

"Second. There is a defect of parties defendant, as plaintiff's petition fails to show that all of the stockholders of the Bank of Rogers, residing in Missouri, have been made parties to this suit, when they are necessary parties to a final determination of this cause.

"Third. That the petition does not state facts sufficient to constitute a cause of action.

"Fourth. That it appears from the face of plaintiff's petition that plaintiff's alleged cause of action is based upon statutes of the State of Arkansas, which are penal and which have no ex-territorial force and

which will not be enforced under the laws of Missouri in the Missouri courts.

"Fifth. It appears from the face of plaintiff's petition that plaintiff's alleged cause of action is barred by the statute of limitations in force in the State of Arkansas and is barred by limitation under the laws of the State of Arkansas, and therefore barred by the Statute of Limitations in Missouri, and that the same is barred by virtue of Section six and ten of chapter ninety-one of the Revised Statutes of Arkansas, the same being Sections 5992 and 5996 of Kirby and Castle's Digest of the Statutes of Arkansas, digested in the year 1916, and being Sections 5064 and 5068, Kirby's Digest of the Statutes of Arkansas, 1904, and which said sections are as follows:

" 'Section 5992. The following actions shall be commenced within three years after the cause of action shall accrue, and not after: 1. All sections founded upon any contract or liability, expressed or implied, not in writing. 2. All actions for trespass on lands or for libels. 3. All actions for taking or injuring any goods or chattels.' [Rev. Stat. chap. 91, sec. 6; Sec. 5064, Kirby's Digest, 1904.]

" 'Section 5996. All actions upon penal statutes, where the penalty or any part thereof goes to the state, or any county or person suing for the same, shall be commenced within two years after the offense shall have been committed, or the cause of action shall have accrued.' [Rev. Stat. chap. 91, sec. 10; Sec. 5068, Kirby's Digest, 1904.]

"Sixth. That several alleged causes of action based upon several and distinct statutes have been improperly joined and united in plaintiff's petition.

"Seventh. It appears from the face of plaintiff's petition that the acts of the Legislature of Arkansas relied upon by plaintiff for his alleged cause of action against defendant, apply only to the counties of Carroll, Benton and White, in the State of Arkansas, and are local laws and would be unconstitutional and void if enacted in the State of Missouri, and are against the public policy of

the State of Missouri, and have no force and effect in the State of Missouri.

"Eighth. It appears from the face of the petition that plaintiff is not authorized to bring this suit on behalf of Benton County, Arkansas.

"Ninth. It appears from the face of plaintiff's petition that the suit is not brought in the name of the real party in interest, and that the real party in interest in this suit is the County of Benton of the State of Arkansas.

"Tenth. That upon the face of the petition the plaintiff is not entitled to the relief therein prayed for, or to any relief.

"Whereof, defendant prays that plaintiff's suit be dismissed, that he be discharged and go hence without day, and that he recover of plaintiff the costs of this suit."

The judgment was as above indicated, and from such judgment the plaintiff has appealed. It is a task to shorten the petition or the demurrer, and as the case largely depends upon these instruments we have quoted them in full.

I. Respondent has filed his motion to dismiss the appeal in this case, for the reason that appellant failed to file in this court ten copies of the record thirty days prior to the date set for hearing. This is a requisite of the statute, it is true, but it appears that respondent was duly served with a copy of the abstract of record more than thirty days prior to the date of the trial here. Having been thus served with a copy he is in no position to complain. Ten copies on file with our clerk would have done him no more good than the one which his signature shows that he received more than thirty days prior to the hearing. By the service upon him, he was advised that the appellant was proceeding in the case. By this service he was given all the statutory time allowed for his response. Whilst it may be true that a literal construction of the statute

*Motion to Dismiss.*

would require the filing of the ten copies of the abstract with our clerk, yet respondent has not been injured by such failure. He had his copy within the statutory period, and was enabled to make his full defense, within the time allowed by the statute. As to him the failure was a harmless omission upon the part of appellant. It injured respondent in no way. The statute should be complied with by appellants, but when the facts show that respondent has not been injured by the omission of a literal compliance, we do not feel that the appeal should be dismissed.

II. Upon the ground of the demurrer, to the effect that the Statute of Limitations had run, the appellant and respondent have injected into the abstract Record. the records in a previous suit. There is no allegation in this petition, before us now, as to a previous suit. Nor is there authority in law for the inclusion of the record in the previous suit. So far as the present case stands, it must be determined on the record before us. This record is made up (1) of the petition, (2) of the demurrer, and (3) of the judgment entered thereon. Had the present petition averred the pendency for a time of a previous suit, we might have a different question before us upon the Statute of Limitations. We must take this record as we find it, upon that question. So taking it our views follow in succeeding paragraphs.

III. The demurrer pleads Arkansas statutes, which it is urged, barred this action in Arkansas within three years. This, the fifth ground of the demurrer, is what has been denominated as a "speaking demurrer" by the courts. Such grounds of a demurrer are Speaking Demurrer. worthless, because the mere demurrer does not prove the allegations of facts. Nor is it the purpose of a demurrer to raise issues of fact. What the law of Arkansas was as to limitation of actions in this class of cases, is an issue of fact, which should be raised by answer, rather than by demurrer. If there was a

statute in Arkansas which barred this action within three years, that was a fact to be proven upon issues properly made.

By some courts it has been held that if upon the hearing of "a speaking demurrer" the facts are agreed to by the parties, they are bound by the course of the trial below. Other cases even deny the right of trying a fact upon demurrer. But we need not discuss or distinguish these cases, because the record before us discloses no agreement to try out a fact upon demurrer. The usual rule is that a demurrer only raises issues of law. Whether there was such a law in Arkansas is a pure question of fact to be proven, because we do not take judicial cognizance of the laws of a sister state. They must be pleaded and proven as any other fact in the case. The matter of the Statute of Limitations can be raised by answer and put in issue by reply, and the facts of the existing statutes shown in evidence. For this reason we shall not discuss the force and effect of the Arkansas three-year Statute of Limitations pleaded by the demurrer.

IV. We have discussed at length the matter of limitations, because seemingly stressed by counsel. So much so that the records of two cases have been combined in one, without an order of consolidation here or in the court below. Now to some of the fatal defects in the petition. We have set it out in full. It is clearly

Misjoinder.    a petition of one count, yet it seeks recovery upon two separate statutory actions. The first is upon Act 82 found first in the petition. This act authorized certain officers · (County Treasurer, being one of the number) to deposit "the public funds in their custody in incorporated banks for safe-keeping." This law made liable for the loss of such funds "the said officers (depositing the same) and the sureties on their official bonds, the bank and the stockholders of the bank." This law was not a law for the selection of a county depository, but was an authorization of named officers to deposit in

any incorporated bank. It is totally different from Act 113 pleaded in the petition. This act (local in nature) directed the county courts of three counties (Carroll, Benton and White) to select county depositories for their public funds, after receiving bids as to the interest that would be paid. Section 4 of the act fixes the following liabilities: "all stock-holders of any such bank . . . . shall be liable for all public funds that such bank . . . . shall fail to pay over on demand to the person entitled to receive the same." In Section 6 of the act it is provided that the deposit by the treasurer of the the funds in the selected depository shall "release said treasurer from any other liability therefor unless the same shall thereafter be repaid to him by such depository."

Act 82 created a liability against the officer, his sureties upon his official bond, the bank and its stock-holders. Act 113 exempts the officer and his official bond after he pays the funds into the selected depository. Of course the selected depository is required to pay interest and to give a bond for the repayment of the money. But this only emphasizes the difference between these two acts, and the fact that they create different causes of action.

The sixth ground of the demurrer was well taken. In making a case under Act 113 different proof would be required. Proof of the selection of a county depository would have to be made. In addition the parties liable are different from those under Act 82.

V. Absent proof of an Arkansas statute of limitations, we must take our own on the presumption that their statute is the same as ours, as expressed by some courts, or on the theory that the law of the forum governs, as expressed by other courts.

We can not consider the record in the *nunc pro tunc* proceeding, which appears to be pending here upon another appeal. There has been no consolidation

Limitation.

of the two cases, which perhaps might have been done. The objects of the *nunc pro tunc* proceeding

was to show that the first case, ''Benton County, Arkansas, and N. S. Henry, Treasurer of said County vs. Lohman,'' had been dismissed on September 4, 1915. This record tends to show that no summons was ever issued, and whether the mere filing of a petition without order of summons would affect the running of a statute of limitation in Arkansas, we leave to a time when it becomes a vital issue.

Apropos to this situation is another matter which should be left until the issue is involved, and that is whether the two suits are the same. To clear this case of underbrush is the chief trouble. We shall not discuss the propriety of the *nunc pro tunc* judgment in the first suit, because not before us at this time. Nor shall we discuss the Arkansas statutes of limitation for the same reason. Further we shall not discuss the mere filing of a petition as the institution of a suit, where no summons is ordered, and no compliance with a rule of court requiring advance fees for the issuance and service of such summons. It has usually been ruled that the filing of a petition is the institution of a suit (State ex rel. v. Broaddus, 245 Mo. l. c. 137 and cases cited), but where there was a rule of court requiring deposit of costs, before issuance of summons, that may modify the broad rule. At any rate it is not a vital issue upon the present record, and we put it aside.

The applicable statute of limitation to a case of this kind in Missouri seems to be Section 1317, Revised Statutes 1919, which is the five-year Statute of Limitations. It is much like the Arkansas statute of three years set out in the demurrer. This statute we must apply, absent proof of an Arkansas statute making the time less. We recognize the rule that if a cause of action is barred in the sister state of its origin, it is barred here, but we must have proof of the foreign statute. The demurrer on the matter of limitations is not well taken, for the reason stated.

VI. It is next urged that Bennett has no right to maintain this suit. The funds lost in the bank were coun-

ty funds according to the petition.  Counsel for appellant, in his brief, cites Arkansas cases, wherein it is said that the courts of that state have ruled that the county treasurer can sue.  There is nothing in the two acts set out in the petition authorizing a suit for county funds by the treasurer.  Nor does the petition allege that these acts have been so construed by the Arkansas courts, and thereby made the law of Arkansas.  In determining this demurrer we are not at liberty to go into the laws of Arkansas, whether statutory, or court-made, further than stated in the petition.  Such laws as are pleaded in the petition are admitted by the demurrer.  Neither of the pleaded acts authorize the treasurer to sue.  The funds are not his, but those of the County of Benton.  This is fully indicated by Act 113, which provides that the bond for the repayment of the deposited funds must be made to the county.  With no applicable statute of Arkansas pleaded in the petition, as to the right of the treasurer to sue, we are relegated to Missouri law.  Under our law the real party in interest is Benton County, Arkansas.  It may be courts of that state have placed a different construction upon their acts quoted in the petition.  To these opinions we can not refer, because all laws of a sister state are matters for pleading and proof.

*Real Party in Interest.*

If under the pleaded acts, or either of them, the Arkansas court had ruled that the treasurer, as treasurer, could sue, without using the name of the county, the real party in interest, such law and rulings should have been pleaded and proven by the decisions of that court.  So far as appears from the petition before us, Benton County, Arkansas, is the real party in interest, and hence the ninth point in the demurrer was well taken.  These points appear to us to be so clear that other points need not be discussed, however interesting they are.  Our latter two rulings authorize the affirmance of the judgment, and it is so ordered.  All concur, except *Woodson, J.,* not sitting.